**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DNB FOOD DISTRIBUTORS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>IDEAL WHOLESALE GROCERS & RICHARD DIAZ,<br><br>*Defendants*. | Civil Action No. 21-19913<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

Presently before the Court is Plaintiff DNB Food Distributor, LLC's ("DNB") unopposed motion for summary judgment. D.E. 39. The Court reviewed all submissions[1] made in support of the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Plaintiff's motion for summary judgment is **GRANTED**.

I. **FACTUAL BACKGROUND and PROCEDURAL HISTORY**

On March 11, 2015, the President of Defendant Ideal Wholesale Grocers, Inc. ("Ideal"), Defendant Richard Diaz, signed a Promissory Note for $750,000 with DNB (the "Note"). *See* Plf. SOMF ¶¶ 3-4, ¶ 12; Garcia Decl., Ex. A. The Note stated that Ideal promised to repay the total principal sum, or any lesser sum that was advanced, plus interest at the maximum rate permitted

---

[1] The Court refers to Plaintiff's brief in support of its motion, D.E. 39-11, as "Plf. Br." and its Statement of Material Facts Not in Dispute, D.E. 36-1, as "Plf. SOMF".

by law. Plf. SOMF ¶ 4; Garcia Decl., Ex. A. According to the Note, the total interest owed would accrue until DNB received full payment of the principal and accrued interest. Plf. SOMF ¶ 5. The Note structure allowed Ideal to have ongoing borrowings and repayments, which could occur until DNB made a demand for payment. Garcia Decl., Ex. A. Finally, pursuant to the Note, Ideal agreed to pay "reasonable attorneys' fees and costs incurred to collect the unpaid principal balance." Plf. SOMF ¶ 6; Garcia Decl., Ex. A. Diaz signed the Promissory Note, which was dated February 20, 2015. Plf. SOMF ¶ 12; Garcia Decl., Ex. E at 32:9-18.[2]

Diaz, in his capacity as Ideal's President, also signed a Security Agreement to secure and collateralize Ideal's existing and future accounts and obligations. Plf. SOMF ¶ 7; Garcia Decl., Ex. B. The Security Agreement indicates that DNB could seek remedies, reserved rights under the Uniform Commercial Code ("UCC") and other applicable laws, and granted DNB a security interest in all of Ideal's assets. Plf. SOMF ¶ 7; Garcia Decl., Ex. B. Although the document is not dated, Plaintiff asserts that Diaz signed the document on February 20, 2015. Plf. SOMF ¶ 7. Diaz also signed a Personal Guaranty on February 20, 2015, guaranteeing Ideal's performance under the Note. Plf. SOMF ¶ 8; Garcia Decl., Ex. C. Diaz confirmed that he also signed the Personal Guaranty. Plf. SOMF ¶ 12; Garcia Decl., Ex. E at 70:19-25.

Ideal received four wire transfers--totaling $455,045.00--from Plaintiff in August 2021

---

[2] DNB contends that Ideal signed a second promissory note for $720,000 on January 2, 2020. *See* Garcia Decl., Ex D; Plf. SOMF ¶ 3 n.1. This second note contains the same language as the February 20, 2015 Note but reflects a different dollar amount. Plf. SOMF ¶ 3 n.1. Diaz purportedly signed the document. Garcia Decl., Ex. D. Diaz originally testified that he did not sign any other promissory notes after 2015. Garcia Decl., Ex. E at 52:12-15. Diaz also stated that he did not authorize anyone to sign on his behalf but did not believe the 2020 note signature was forged. *Id.* at 55:2-11. Moreover, Diaz affirmed that he received a copy of the 2020 note, which contained his signature, via email in August 2021. *Id.* at 68:2-5. As Plaintiff points out, however, this second promissory note does not affect the outcome of the motion, nor does it affect the total sum of money owed. Plf. SOMF ¶ 3 n.1. As a result, this factual dispute does not impact the current motion.

2

pursuant to the Note. Plf. SOMF ¶ 12; Garcia Decl., Ex. F. Ideal does not dispute receiving the funds. Plf. SOMF ¶ 14. DNB demanded repayment of the principal of the Note in September 2021. *Id.* ¶ 17. To date, Ideal has not repaid any portion of the advanced funds. The outstanding balance totals $568,145.50, which includes $113,100.50 in interest. *Id.* ¶¶ 15, 18.

Plaintiff filed suit in 2021, seeking to recover the unpaid balance from Ideal under the Note and Security Agreement, and from Diaz, through the Guaranty. D.E. 1. In accordance with this Court's judicial preferences, Plaintiff filed a letter requesting leave to file a motion for summary judgment, along with its Local Civil Rule 56.1 Statement of Material Facts. D.E. 36. Defendants did not respond to Plaintiff's request within the time permitted. As a result, this Court entered a text order providing Defendants with additional time to respond. The Court explained that if Defendants did not respond, the Court would grant Plaintiff's request and "its SOMF will be treated as unopposed for purposes of deciding the motion." D.E. 37. Defendants did not respond. This Court, therefore, granted Plaintiff's request and deemed the SOMF "unopposed for purposes of the motion." D.E. 38 at 2. Plaintiff subsequently filed the instant motion. D.E. 39.

**II.     SUMMARY JUDGMENT STANDARD**

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving

3

party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

4

## III. ANALYSIS

### A. Breach of Contract (Counts One and Two)

Plaintiff argues that it is entitled to summary judgment because Ideal breached the Note and Diaz breached the Personal Guaranty. Plf. Br. at 6. To establish a breach of contract claim under New Jersey law,[3] a plaintiff must prove that (1) "the parties entered into a contract containing certain terms"; (2) "plaintiffs did what the contract required them to do"; (3) "defendants did not do what the contract required them to do"; and (4) "defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs." *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (internal punctuation omitted).

Here, Defendants do not contest any of the elements necessary to establish a breach of either contract. Accordingly, the Court only briefly addresses each element. First, the Note was a contract between the parties. Diaz signed the Note and confirmed his signature. Plf. SOMF ¶ 12; Garcia Decl., Ex. E at 32:9-18. Next, Ideal received wire transfers from Plaintiff in August, totaling $455,045.00 in principal. Plf. SOMF ¶ 18; Garcia Decl., Ex. F. In addition, Plaintiff demanded repayment "[o]n or about September 14, 2021." Plf. SOMF ¶ 17. Consequently, Plaintiff performed its obligations under the Note. Ideal, however, did not complete the ongoing repayments nor provide full repayment after Plaintiff's demand. *Id.* ¶¶ 14-15. Ideal, therefore,

---

[3] Although neither party provides a choice of law analysis, Plaintiff applies New Jersey law to support its arguments. Seeing no clear reason to deviate, the Court applies New Jersey law to decide the motion. *See Cole v. NIBCO, Inc.*, No. 13-7871, 2015 WL 2414740, at *5 (D.N.J. May 20, 2015) (explaining that because "Defendant suggests, and Plaintiffs do not dispute" which state law applies, "the Court will follow the lead of the parties and will not engage in a choice of law analysis"); *Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999)). Importantly, the three contracts at issue all contain New Jersey choice-of-law clauses. *See* Garcia Decl., Exs. A, B at ¶ 11.04, C at ¶ 12.

5

failed to perform its obligation under the Note. Finally, DNB incurred damages because it did not receive repayment on the principal or interest amounts, totaling $568,145.50 as of April 5, 2023. *Id.* ¶ 18. Accordingly, Plaintiff establishes that Ideal breached the Note.

In addition, Plaintiff contends that it is entitled to attorney's fees under the Note. *See* Garcia Decl. ¶ 6, Garcia Decl., Ex. A. Although New Jersey law generally disfavors fee-shifting, "a prevailing party can recover [attorneys'] fees if [it is] expressly provided for by statute, court rule, or contract." *Packard-Bamberger & Co., Inc. v. Collier*, 771 A.2d 1194, 1202 (N.J. 2001). When a contract provides for fee shifting, the applicable contractual provision "should be strictly construed in light of [New Jersey's] general policy disfavoring the award of attorneys' fees." *Litton Indus., Inc. v. IMO Indus., Inc.*, 982 A.2d 420, 428 (N.J. 2009). But a court must "enforce the terms as written and not fashion a better contract for the parties than they themselves made." *Nye v. Ingersoll Rand Co.*, 783 F. Supp. 2d 751, 764 (D.N.J. 2001) (quoting *Loigman v. Twp. Comm. of the Twp. of Middletown*, 687 A.2d 1091, 1097 (N.J. App. Div. 1997)). Here, the Note clearly states that Plaintiff can recover from Ideal "the reasonable attorneys' fees and costs incurred to collect the unpaid principal balance and interest owning on this note." Thus, Plaintiff is contractually entitled to attorneys' fees from Ideal. However, a request for attorney's fees must comply with L. Civ. R. 54.2. As a result, the Court, provides Plaintiff leave to file a properly supported motion for attorney's fees in accordance with the Local Civil Rules.

Plaintiff also establishes a breach of contract as to Diaz with respect to the Guaranty. The Guaranty is a contract between the parties. Diaz signed the Guaranty to secure Ideal's obligations of the Promissory Note. Plf. SOMF ¶ 8; Garcia Decl., Ex. C. Plaintiff "did what the contract required [it] to do" and because Diaz has not made payment for Ideal's obligation under the Note, Diaz failed to perform. Plf. SOMF ¶ 16. Finally, Plaintiff incurred damages due to Diaz's failure

6

to perform under the Guaranty.

      In sum, summary judgment is granted to Plaintiff for Counts One and Two.

      **B. Replevin (Count Three)**

      Plaintiff also argues it is entitled to summary judgment for its replevin claim due to the Security Agreement. Plf. Br. at 7. A transaction "that creates a security interest in personal property or fixtures by contract is a secured transaction and is . . . subject to Article 9 of the UCC." *Highland Cap. Corp. v. Sassan Kafayi, DDS*, No. A-1978-18T1, 2020 WL 914710, at *4 (N.J. Super. Ct. App. Div. Feb. 26, 2020) (citing N.J. Stat. Ann. § 12A:9-109). To obtain the right to replevin under the UCC, a secured party must have a security interest "created or provided for under a security agreement, whether or not any obligation to be secured is outstanding." N.J. Stat. Ann. § 12A:9-102(72)(A). A security interest is an interest in property that "secures payment or performance of an obligation." N.J. Stat. Ann. § 12A:1-201(35). The UCC allows a secured party to take possession of collateral after default. N.J. Stat. Ann. § 12A:9-609. A secured party may proceed with or without judicial process. *Id*.

      Ideal entered into the Security Agreement on February 20, 2015. Plf. SOMF ¶ 7; Garcia Decl., Ex. B. The Security Agreement provides that DNB is entitled to the rights and remedies under the UCC. Plf. SOMF ¶ 7. The Security Agreement also creates a security interest for DNB in the following:

> [E]xisting and future Accounts, Chattel paper, Deposit Accounts, Documents, Equipment, General Intangibles, Inventory, Instruments (including without limitation promissory notes), Investment Property, Letter-of-credit rights, Supporting Obligations, and all other goods and personal property, leasehold interests, as tenant or lessee, and all books and records, documents and papers relating to the foregoing (collectively, the Collateral).

Garcia Decl., Ex. B at ¶ 3 (underlining in original). Finally, Ideal's failure to pay obligations

7

when due constitutes a default. *Id.* ¶ 8(a). As a result, pursuant to the Security Agreement and the UCC, Plaintiff is entitled to a writ of replevin.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment, D.E. 39, is **GRANTED**. An appropriate Order accompanies this Opinion.

Dated: July 18, 2023

_____
John Michael Vazquez, U.S.D.J.